UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| DEWAYNE and AMANDA VAUGHN, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 6: 07-429-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| ALTERNATIVE DESIGN MFG. AND | ) | |
| SUPPLY, INC.; LINCOLN POULTRY | ) | **MEMORANDUM OPINION** |
| CLEAN OUT EQUIPMENT; CARL | ) | **AND ORDER** |
| BIGGS; and GARY BAILEY, | ) | |
| | ) | |
| Defendants. | ) | |

** ** ** ** **

This matter is pending for consideration of Defendants Lincoln Poultry Clean Out Equipment ("Lincoln Poultry") and Carl Biggs' ("Biggs") motion for summary judgment [Record No. 22], as well as Defendant Alternative Design Manufacturing and Supply, Inc.'s ("Alternative Design") motion for summary judgment. [Record No. 19] For the reasons discussed below, the Court will grant both motions.

## I.    BACKGROUND

Plaintiffs Dewayne and Amanda Vaughn are husband and wife residing in Wayne County, Kentucky. On December 16, 2005, Dewayne Vaughn was injured in the course of employment with a Cobb-Vantress commercial chicken house located near Monticello, Kentucky. In the process of cleaning-out the chicken cages and a conveyor belt, Vaughn's foot became lodged in a floor-mounted manure auger. The auger functioned to remove manure from

-1-

inside the chicken coop.  Based on Cobb-Vantress's internal incident investigation, it was established that other Cobb-Vantress employees had removed the safety guards from the auger some time before Vaughn had begun cleaning.  As Vaughn was cleaning the cages, other employees turned the augers on.  Unaware of this fact, Vaughn stepped into one of the unguarded, active augers and his foot was severely injured.  As a result, he underwent numerous surgeries, including the amputation of his right leg below the knee.  [Record No. 23]

Defendant Lincoln Poultry supplies and installs component parts for floor-mounted manure augers.  Defendant Carl Biggs operates Lincoln Poultry out of his farm shop located near Lincoln, Nebraska.  He installed approximately thirty-four augers for various Cobb-Vantress chicken houses between 1999 and 2004.  [Record No. 22]  Biggs installed the auger at issue in this case.  Defendant Alternative Design, a company operating out of Siloam Springs, Arkansas, manufactures, designs, and sells cages and conveyor belts to chicken houses.  Alternative Design sold Cobb-Vantress the chicken cages and conveyor belts at issue here.  [Record No. 19][1]  Gary Bailey, whose relationship to Alternative Design is disputed by the parties, installed the cages and conveyor belts at the Cobb-Vantress Monticello facility.

Alternative Design filed its motion for summary judgment on May 9, 2008.  [Record No. 19]  It asserts that it is entitled to summary judgment because it did not manufacture, design, distribute, sell, or install the auger in which Vaughn's foot became caught.  The Vaughns argue that Alternative Design was aware of the fact that their chicken cages and conveyor belts would

---

[1]  The Vaughns filed suit against these Defendants – along with co-Defendants Hart Construction, Inc. and Gary Bailey – in the Wayne Circuit Court in December 2006.  The case was removed to this Court in December 2007.

be used in conjunction with the auger at the Cobb-Vantress facility and, therefore, it was under an obligation to install the cages and conveyor belts with safeguards and warnings as to such joint use. [Record No. 23]

Lincoln Poultry and Biggs filed an amended motion for summary judgment on June 2, 2008. They assert that they are entitled to summary judgment because: (1) Vaughn was never in contractual privity with Biggs or Lincoln Poultry; (2) the auger was neither defectively designed nor properly used at the time of the accident; and (3) the accident could not have been prevented by Biggs' exercise of ordinary care. [Record No. 22]

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986); *Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

The party moving for summary judgment bears the burden of showing conclusively that no genuine issue of material fact exists. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir.

2008).  Once a moving party has met its burden of production, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Sigler v. American Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)).  The nonmoving party cannot rely upon the assertions in its pleadings; rather, that party must come forward with probative evidence such as sworn affidavits, to support its claims.  *Celotex*, 477 U.S. at 324.  In making this determination, the Court must review all the facts and the inferences drawn from those materials in the light most favorable to the nonmoving party.  *Matsushita*, 475 U.S. at 587.  Additionally, a federal court sitting in diversity must apply the law of the forum state of the claims asserted. *Lukowski v. CSX Transp., Inc.*, 416 F.3d 478, 484 (6th Cir. 2005).

## III.   LEGAL ANALYSIS

### A.    The Vaughns' Claims Against Alternative Design

The Vaughns argue that Alternative Design was responsible for defectively designing the chicken coop system and auger as a whole, as well as for failing to warn Vaughn and other Cobb-Vantress employees about proper use and cleaning of the equipment.  These claims are based on theories of strict liability and negligence.

The Kentucky Product Liability Act provides that "a 'product liability action' shall include any action brought for or on account of personal injury, death or property damage *caused by or resulting from* the manufacture, construction, design . . . of any product."  K.R.S. 411.300(1) (emphasis added).  Alternative Design contends that summary judgment is warranted because it had no role in the design, manufacture, or sale of the auger in which Vaughn's foot

became caught.  Instead, it argues that it was only concerned with the chicken cages and conveyor belt that Vaughn had been cleaning at the time.  The Vaughns' liability claims are based on the premise that, although Alternative Design did not manufacture, design, or sell the actual auger, the company was responsible for the design a complete chicken coop system which included the cages and conveyor belt working in conjunction with the auger.  Thus, the threshold question is whether Alternative Design had any role in the auger's manufacture, construction, or design.

There are two sets of equipment at issue here: the cages/conveyor belt and the auger.  The Vaughns assert that, since Alternative Design designed and installed its cage/conveyor belt equipment over the augers, it was responsible for the overall design and safety of the augers as well as the cage and conveyor belt.  The auger was supplied and its component parts installed by Lincoln Poultry in late 2004.  The conveyor belt and accompanying chicken cages were installed by Alternative Design some time after the auger had been installed.

There is no evidence that Lincoln Poultry and Alternative Design jointly designed or installed the auger and cages/conveyor belt at the Monticello Cobb-Vantress facility.  As a result, the Vaughns' "joint enterprise" argument is not only inapposite, it is unsubstantiated.  The fact that Eddie Lloyd, the CEO of Alternative Design, had dealt with Lincoln Poultry in the past and knew that his equipment was sometimes used in conjunction with an auger is simply not enough to establish that Alternative Design had design authority over the auger or that Alternative Design and Lincoln Poultry were engaged in a joint enterprise.   The Vaughns have presented

no other evidence showing that Alternative Design was the designer of a "system" that included the auger, cages, and conveyor belt.

These arguments for a system design theory are based on the Vaughns' assertion that Gary Bailey, as an agent of Alternative Design, knew of the auger and installed the cages and conveyor belt to work with the auger. Bailey testified that he installed the cages over the auger so that the manure would fall onto the floor auger. [Record No. 23, Attachment 4] Dr. Richard Harkness, a mechanical engineer, concluded that this placement decision makes Alternative Design the "system designer." [Record No. 23, Attachment 15] The Court does not necessarily agree or disagree with Dr. Harkness's conclusion; however, Dr. Harkness's statements are only relevant if Gary Bailey was acting as an agent for Alternative Design. The Court concludes that he was not.

As a general rule, an employer is responsible for the negligent acts of an agent, but not of an independent contractor. *Williams v. Kentucky Dept. of Educ.*, 113 S.W.3d 145, 151 (Ky. 2003). In determining whether an individual is an agent or an independent contractor, the Supreme Court of Kentucky applies factors from Section 220(2) of the Restatement (Second) of Agency. The following factors, among others, are considered:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
>
> (b) whether or not the one employed is engaged in a distinct occupation or business;
>
> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

*Kentucky Unemployment Ins. Comm'n v. Landmark Cmty. Newspapers of Kentucky, Inc.*, 91 S.W.3d 575, 579 (Ky. 2002).

At one time, Kentucky courts considered the chief criteria to be the right to control the details of the work. However, the supreme court has clarified that no one factor is deemed controlling. *Id.* The factors must be considered in light of the specific facts of the case. Whether an individual is an agent or an independent contractor is a question of law when the underlying facts are substantially undisputed; it is a question of fact if the underlying facts are materially disputed. *Uninsured Employer's Fund v. Garland*, 805 S.W.2d 116, 117 (Ky. 1991). Here, the Vaughns do not dispute any of the underlying facts, but instead only state that Gary Bailey had worked with Cobb-Vantress first as an employee of Alternative Design and later as an independent contractor. Thus, no factual dispute exists and the question is one of law.

Looking to the factors set out above, the Court concludes that Bailey was acting as an independent contractor. The majority of the factors support this conclusion. Bailey testified that

-7-

Alternative Design had no control over when and how he did the installation of the cages and conveyor belt. [Record No. 26, Attachment 4] Installing the cages and conveyor belt is a distinct occupation requiring a particularized skill. Bailey supplied his own tools, insurance, and manpower for the installation. He was paid by the job and both he and Alternative Design believed that they were creating an employer-independent contractor relationship. Alternative Design itself claims to be a manufacturer, designer, and seller of cages, thus placing it outside of the business of installing the cages. The Vaughns do not dispute any of these facts and present no other facts in support of their contention. Because the Court concludes that Bailey was an independent contractor, Alternative Design is not liable for the claims pertaining to his installation of the chicken cages and conveyor belt.

Alternatively, the Vaughns argue that Bailey should be deemed an ostensible agent of Alternative Design. As Alternative Design points out, this theory is only available for a third person who relies upon the acts of an apparent agent. The Supreme Court of Kentucky has defined "ostensible agency" as follows:

> One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm cause by the lack of care or skill of the one appearing to be a servant or other agent as if he were such.

*Roethke v. Sanger*, 68 S.W.3d 352, 363 (Ky. 2001).

In this case, the Vaughns present no evidence that they themselves relied upon a representation that Bailey was an agent of Alternative Design. If any third party reliance occurred, it was on the part of Cobb-Vantress and not the Vaughns. In fact, the Vaughns acknowledge this in their arguments. [Record No. 23] Dewayne Vaughn was not an employee

-8-

of Cobb-Vantress when the cage was installed.  Likewise the Vaughns have not offered proof that he knew anything about who installed the cage at the time of the accident.  The Vaughns, as the party asserting ostensible agency, must identify some facts showing that they reasonably relied upon the ostensible agency relationship to his detriment.  They have failed to do so here.

A party opposing summary judgment must present some evidence on which a jury could reasonably return a verdict in the respondent's favor.  *Harrison*, 539 F.3d at 516.  The Vaughns do not offer sufficient evidence to support their theories of joint enterprise, system design, and agency.  As a result, the Court is unable to conclude that Alternative Design was responsible for Dewayne Vaughn's accident.  Thus, summary judgment in favor of Alternative Design is appropriate.

### B.     The Vaughns' Claims Against Lincoln Poultry and Carl Biggs

The Vaughns assert that Lincoln Poultry and Biggs defectively designed the auger system and failed to warn Cobb-Vantress or its employees about the proper use and cleaning of the equipment.  These claims are based on theories of breach of warranty, strict liability, and negligence.

Biggs was contacted by Barton Williams ("Williams"), the Research and Development Farm Operations Manager at Cobb-Vantress's Monticello facility.  Williams and Biggs agreed that Biggs would install component parts for eight augers at the facility.  [Record No. 24, Attachment 1] However, because Cobb-Vantress was still in the process of building one of the chicken houses that would eventually use these augers, Biggs ended up installing the component parts for only five of the eight augers.  He left the parts for the remaining three augers, which

-9-

were later installed by Cobb-Vantress employees.  The auger in which Dewayne Vaughn's foot became caught was one of the five that Biggs did install.  [Record No. 24]  Biggs did not install or supply the safety guards covering the augers, although it is unclear who actually did.  [Record No. 24, Attachment 1]

The Vaughns argue that the auger installed by Biggs was defective because he "failed to install an interlock between the auger and the guards which would have made the auger inoperable if the guards were removed."  [Record No. 25]  As with Defendant Alternative Design, the Vaughns ask that this Court find that Biggs was under an obligation to design and install an interlock in addition to the equipment he had contracted to install.  The Vaughns present no evidence showing that the actual equipment installed by Biggs (*i.e.*, component parts for the auger) were defective.

The Supreme Court of Kentucky has found that a product may be "'defective' when it is properly made according to an unreasonably dangerous design, or when it is not accompanied by adequate instructions and warning of the dangers attending its use."  *Ulrich v. Kasco Abrasives Co.*, 532 S.W.2d 197, 200 (Ky. 1976).  A plaintiff may "bring a defective design claim under either a theory of negligence or strict liability.  The foundation of both theories is that the product is unreasonably dangerous."  *Ostendorf v. Clark Equip. Co.*, 122 S.W.3d 530, 535 (Ky. 2003) (quotation omitted).  Either theory requires the manufacturer to take reasonable care to protect against foreseeable dangers.  *Id*.  A court evaluating a manufacturer's actions engages in a risk-utility analysis; "the trier of fact must employ a risk-utility balancing test that considers alternative safer designs and the accompanying risk pared against the risk and utility of the

-10-

design chosen." *Id*.  However, "[t]he maker is not required to design the best possible product or one as good as others make or a better product than the one he has, so long as it is reasonably safe." *Sturm, Roger & Co., Inc. v. Boyd*, 586 S.W.2d 19, 21-22 (Ky. 1979).

Here, the Vaughns are essentially arguing that Biggs should take responsibility for equipment that he did not manufacture or install.  Biggs installed component parts of an auger. The Vaughns argue that he should have designed and installed those parts, along with parts attaching the auger to safety guards that were later installed by someone else.  To require Biggs to do so would be to require him to do more than design a reasonably safe product or even a better product; it would require him to design a *different* product.  Biggs contracted with Cobb-Vantress to install auger parts.  He had nothing to do with the installation of safety guards. Biggs stated that he "knew" safety guards would be needed, but had "never" installed them for any of the other Cobb-Vantress facilities he had equipped.  [Record No. 24, Attachment 1]

Cobb-Vantress had shown Biggs an example of the auger they wanted, and that auger was protected by a safety guard.  However, Cobb-Vantress only asked Biggs to install the component parts for the auger.  In fact, Cobb-Vantress went on to have safety guards installed by either themselves or another party after Biggs had installed the auger components.  The Vaughns present no evidence showing that Biggs had any responsibility for linking together the auger components and the safety guards.  Even if the auger parts and safety guards are to be considered a complete product or system, this Court concludes that Biggs, as a "component part supplier," has no duty to "analyze the design of the completed product which incorporates [his] non-defective component part." *Worldwide Equip., Inc. v. Mullins*, 11 S.W.3d 50, 57 (Ky. Ct. App.

1999).  The Vaughns have presented no evidence showing that any of the auger components Biggs installed were unreasonably dangerous.

Biggs testified that Cobb-Vantress asked him to install augers according to the way augers had been installed in some other Cobb-Vantress facilities.  The Vaughns do not dispute this testimony.  The Supreme Court of Kentucky has concluded that where products are manufactured "according to plans and specifications furnished by the buyer and the alleged defect is open and obvious, the manufacturer is protected from liability for injuries occasioned by use of the product." *McCabe Power Body Co. v. Sharp*, 594 S.W.2d 592, 595 (Ky. 1980). Although Cobb-Vantress did not exactly provide Biggs with "plans and specifications" for the installation, Cobb-Vantress certainly had an active role in its planning and execution.  Williams testified that he told Biggs to "build us something like Three Springs and Grand Meadow's [other Cobb-Vantress chicken houses] got."  [Record No. 24, Attachment 5]  Williams further testified that Cobb-Vantress, rather than Biggs, had the responsibility for the selection and installation of the operating controls and wiring for the auger.  [Record No 24, Attachment 5] Not only had Cobb-Vantress provided direction for the installation of the auger parts, but Cobb-Vantress itself installed a number of the eight augers Biggs was originally to have installed.  And finally, Williams testified that he had never asked Biggs to install safety guards, and that Cobb-Vantress had had them installed subsequent to Biggs' installation of the auger parts.  [Record No. 24, Attachment 5]

Lincoln Poultry and Biggs cannot be held responsible for installing an interlock between the auger and the safety guards because Lincoln Poultry had no control over the safety guards

-12-

or even the wiring of the auger.  Biggs only installed the component parts for an auger, and Cobb-Vantress installed the safety guards at a later time.  Biggs' auger installation was not unreasonably dangerous and the Vaughns have not presented sufficient evidence for a jury to disagree with this conclusion.

Finally, there is no dispute that this accident would not have occurred if the safety guards had not been removed from the auger.  However, that fact does not establish that either Alternative Design or Lincoln Poultry produced or installed a defective product.  Liability in tort cannot be imposed where the evidence fails "to establish a reasonable probability that a defect in the product was responsible for the harm."  *Holbrook v. Rose*, 458 S.W.2d 155, 158 (Ky. 1970).  Under Kentucky principles of strict liability, the question is "whether the product creates such a risk of an accident of the general nature of the one in question that an ordinarily prudent company engaged in the manufacture of such a product would not have put it on the market." *Montgomery Elevator Co. v. McCullough by McCullough*, 676 S.W.2d 776, 780 (Ky. 1984) (quotation omitted).  Neither the cage and conveyor belt system installed by Alternative Design nor the auger components installed by Biggs created such a risk of accident that an ordinarily prudent manufacturer would not have put them on the market.  Under standard negligence principles, neither Alternative Design nor Lincoln Poultry and Carl Biggs could have foreseen that Cobb-Vantress employees would operate the auger without the safety guards attached.  Therefore, the Defendants cannot be held liable under strict liability or negligence theories because their products and installations were not the cause of Vaughn's injury.

## IV.    CONCLUSION

Having reviewed the affidavits, pleadings, depositions, and other submitted materials, the Court will grant both pending motions for summary judgment.  Neither the equipment installed by Alternative Design nor the equipment installed by Lincoln Poultry and Carl Biggs was defective.  These Defendants cannot be held responsible for the safety of a whole system in which their equipment was but a part, and Plaintiffs' arguments to the contrary are not support by evidence.  Accordingly, it is hereby

**ORDERED** as follows:

1.    Defendant Alternative Design's motion for summary judgment [Record No. 19] is **GRANTED**;

2.    Defendants Lincoln Poultry's and Carl Biggs' motion for summary judgment [Record No. 22] is **GRANTED**;

3.    The Plaintiffs' claims against Alternative Design, Lincoln Poultry, and Carl Biggs are **DISMISSED**.

This 16th day of October, 2008.



Signed By:

_**Danny C. Reeves**_ DCR

**United States District Judge**